IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DONNA C. WIGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 10-00454-CG-N |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff, Donna C. Wiggins, brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") from September 1, 2006. This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The parties previously waived oral arguments (docs. 20, 21) and this matter is before the undersigned on the administrative record (doc. 14) and the parties' respective briefs (Docs. 15, 18). Upon consideration of the record and the parties' briefs, it is the **RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED**.

  I.  Procedural History.

Plaintiff, Donna C. Wiggins, filed an application for disability benefits on January 30, 2007, claiming an onset of disability as of September 1, 2006 (Tr. 88-91). Wiggins also filed an application for SSI benefits on January 22, 2007 (Tr. 92-96). These

applications were initially denied on February 27, 2007 (Tr. 51-55). Wiggins then filed a request for hearing on March 9, 2007 (Tr. 58). A hearing before Administrative Law Judge ("ALJ") Renee Hagler was held on August 13, 2008 (Tr. 25-46) at which Wiggins and Doug Miller, a vocational expert, testified. Wiggins was born on March 14, 1962, and was 46 years old at the time of her administrative hearing before the ALJ. (Tr. 29).

On October 14, 2008, the ALJ entered an order denying Wiggins' applications (Tr. 10-23). Although the ALJ found that plaintiff suffers from the severe impairments of degenerative disc disease of the lumbar spine and lower eyelid basal cell carcinoma (Tr. 15), she determined that plaintiff retains the residual functional capacity ("RFC") to perform light work with only occasional crawling and bending and with the ability to sit or stand every one to two hours to relieve pain (Tr. 16). The ALJ presented this RFC to the vocational expert who then testified that a significant number of jobs existed for an individual with such an RFC. (Tr. 22, 44). Based upon the vocational expert's testimony, the ALJ declared that plaintiff was not disabled. (Tr. 22).

On October 22, 2008, Wiggins requested a review of the ALJ's decision by the Appeals Council. (Tr. 87). This request for review was denied by the Appeals Council on June 3, 2010 (Tr. 1-5), making the October 14, 2008 decision the final administrative decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Wiggins now timely appeals from that decision and all administrative remedies have been exhausted.

II.     Issues on Appeal.

1.     Whether the ALJ erred because she depended solely on the opinion of a non-examining, reviewing State Agency medical consultant to find that Wiggins can perform light work?

2.     Whether the ALJ erred in failing to make a finding of fact concerning the effects medications have on Wiggins' ability to engage in work-related tasks?

III.    Standard of Review.

In reviewing claims brought under the Social Security Act, this Court's role is a limited one.  Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. *See*, 42 U.S.C. § 405(g); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996);  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Chater, 84 F.3d at 1400;  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991).  *See also*, Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is

defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[ ]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Lynch v. Astrue, 358 Fed.Appx. 83, 86 (11th Cir. 2009); Martino v. Barnhart, 2002 WL 32881075, * 1 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).

    IV.  Discussion.

        A.  Residual Functional Capacity[1]

The ALJ found that Wiggins "has the residual functional capacity to perform light work[2] . . . with only occasionally crawling and bending [and] She must also be allowed to sit or stand every one to two hours to relieve pain." (Tr. 16). The ALJ's hypothetical to the vocational expert at the hearing on August 13, 2008, included an ability to lift "[t]en pounds frequently, occasionally twenty pounds." (Tr. 44).

---

[1] An RFC assessment is based upon all of the relevant evidence and measures a claimant's ability to do work despite his impairments. *See* Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, pull, etc. *See* 20 C.F.R. § 404.1545(b). Relevant evidence regarding a claimant's RFC may include medical reports and assessments by state agency medical consultants. 20 C.F.R. § 404.1513(a), (c).

[2] In order to determine the physical exertion requirements of work in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. *See* 20 C.F.R. § 404.1567. Sedentary work involves lifting no more than ten pounds at a time, with periods of standing or walking generally totaling no more than two hours in an eight hour workday, and sitting totaling approximately six hours in an eight hour workday. *See* Kelley v. Apfel, 185 F.3d 1211, 1213 n. 2 (11th Cir.1999). Light work involves lifting no more than 20 pounds at a time and frequently lifting objects weighing up to 10 pounds, as well as a good deal or walking or standing, or sitting with some pushing and pulling of arm or leg controls. *See* Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir.1987); 20 C.F.R. § 416.967(b).

Wiggins' first assignment of error is that "[t]he Commissioner's residual functional capacity determination is not based upon any evidence of record." (Doc. 15 at 4). Specifically, Wiggins argues that the ALJ failed to identify the source of her RFC determination and that the only RFC in the record was the one completed by a non-examining, reviewing State Agency employee, Hayward Shula, on February 27, 2007. (*Id*. at 5, *citing* Tr. 201-208). To the contrary, the Commissioner argues, in sum, that the ALJ "provided numerous legally valid reasons to support his [sic] disability determination" and contends that "the medical record [] was devoid of diagnostic and clinical findings that suggested greater limitations than found by the ALJ." (Doc. 18 at 6-8).

The following are references to the evidence of record which were relied upon by the ALJ in this case:

- "[T]he ALJ noted, examination findings have often been found to be normal or minimally abnormal (Tr. 20).

- "For instance, Dr. Belen, who treated Plaintiff around the time she alleged she became disabled, found only back tenderness, but otherwise normal sensory and motor function (Tr. 18, 210, 214, 219)."

- Dr. Dempsey, an orthopedic specialist, who performed comprehensive evaluative examinations, found only back tenderness twice and decreased lumbar range of motion once, but otherwise found normal gait, reflexes, strength, and motor function; full range of motion; intact sensation; no pain during the straight leg raising test; no neurological deficits, no muscle spasms; and no muscle atrophy or weakness (Tr. 18-20, 237-38, 244, 246).

(*Id.* at 8-9)

A review of plaintiff's medical records confirms that there exists no objective and clinical findings which would support a contention that plaintiff was unable to perform

5

the reduced range of light work which the ALJ assessed plaintiff capable of performing. The record contains no imposition by a physician, either treating or examining, of any limitation beyond what the ALJ included in her hypothetical to the vocational expert. The Commissioner correctly argues that "Plaintiff's limited, conservative, and effective treatment undermined her claim [of disability]." (*Id.*), *citing* 20 C.F.R.§ 404.1529(c)(3)(v)(treatment received is a relevant factor in evaluating symptoms); SSR 96-7p, 1996 WL 374186, *3 (1996); Falcon v. Heckler, 732 F.2d 827, 832 (11th Cir. 1984) (conservative treatment may support ALJ's disability determination). There is no medical evidence to suggest that any greater functional limitations were warranted. Additionally, there are facts supporting the ALJ's questions regarding Plaintiff's credibility about her subjective complaints. Specifically, while Plaintiff maintains that she suffered medication side-effects, the medical records do not support her contention. Finally, there is no reference in the ALJ's decision that she considered the assessment of the non-medical State Agency employee in reaching the disability determination (Tr. 13-23). [3]

It is undisputed that no treating or examining physician has completed a physical capacities evaluation on Wiggins.[4] However, no objective evidence has been proffered

---

[3] On February 27, 2007, as part of the initial disability determination process, a disability examiner reviewed the record and concluded that plaintiff could perform work at the light exertional level. (TR 201-208) This Single Decision Maker "SDM" is not a medical source and there is no indication that this determination was considered by the ALJ in rendering her decision in this case.

[4] The record indicates that Dr. Dempsey, plaintiff's treating physician, specifically advised her in a letter dated March 17, 2008, that "she needed to get her attorney to write us and (Continued)

by Wiggins to support her testimony that she could stand or sit for no longer than 15 to 20 minutes at a time (Tr. 38); could not lift anything heavier than a gallon container of milk (Tr. 38); and cannot bend over (Tr. 39). Wiggins stated on February 5, 2007, that her pain arose when she sat or stood too long, which she defined as "more than 2 hours" for standing and "2 to 1 hours" for sitting. (Tr. 132). She also stated that her medications relieved her pain for "4 to 5 hours." (Tr. 133). The medical records are devoid of any evidence that Wiggins' physical condition changed any appreciable degree since February 5, 2007, with the sole exception of the appearance of the basal cell carcinoma on her right lower eyelid. (Tr. 223).

     The ALJ acknowledges that on June 17, 2008, Dr. Dempsey noted that Wiggins' "had a 75 percent range of motion of the lumbar spine (flexion 70 degrees, extension 20 degrees, lateral rotation 15 degrees to the right and the left and lateral flexion 25 degrees to the right and left)," but then concludes that his ultimate adoption of plaintiff's unsupported conclusions on the Clinical Pain Assessment Form that plaintiff herself completed did not constitute an opinion which deserved to "be given substantial or considerable weight." (Tr. 18-19) . There exists no basis for this Court not to credit Judge Hagler's finding that Wiggins' testimony was not credible (Tr. 19). According to Dr. Dempsey's report dated June 18, 2008, plaintiff reported that her back pain was only

---

ask us to schedule her work capacity evaluation." (Tr. 244, 248). Wiggins does not contend that such an evaluation was ever requested or performed.

4 on a scale of 1 to 10.  (Tr. 246).[5]   There exists no objective evidence to support Wiggins' testimony that she cannot either lift "[t]en pounds frequently, occasionally twenty pounds" (Tr. 44) or "occasionally crawl[] and bend[]" (Tr. 16), as concluded by the ALJ.  The objective evidence clearly supports the ALJ's opinion that plaintiff can perform light work if simply given the opportunity "to sit or stand every one to two hours to relieve pain" (Tr. 16).   Dr. Dempsey examined plaintiff on July 23, 2008, when she complained of "pain primarily in her left rib cage" and her concern "about rib fractures" which might have been caused when "her husband threw her to the ground."  (Tr. 294).  After his examination, Dr. Dempsey concluded that there were no obvious fractures of her ribs and that the pain "should resolve on its own and no reason today for further injections or increasing her dose of pain medications. (*Id*.).  For the first time, plaintiff's medical records indicate that a physician restricted her activities by prohibiting heavy lifting, housework or yard work" but did so for only "the next three or four days [after which she was permitted to] "[r]esume normal activities." (*Id*.).

Plaintiff relies essentially on Coleman v. Barnhart, 264 F.Supp.2d 1007 (S.D. Ala., 2003), wherein it was held:

---

[5] In an assessment completed by the plaintiff on October 29, 2007, plaintiff reported having back pain at a level of 8 out of 10 and leg pain at a level of 10 out of 10 (Tr. 240) but then admitted that this was after she had **not taken** any prescribed pain medication or muscle relaxant "for 3 months" (Tr. 241).  Plaintiff presented to the emergency room on July 16, 2008 with back pain but reported "moderate relief" after receiving "2 mg of Dilaudid IM, 60 mg of Norflex IM, 8 mg. of Decadron p.o."  (Tr. 267).  Plaintiff was instructed to follow-up with Dr. Dempsey.  However, plaintiff presented instead on July 19, 2008, to Springhill Hospital chronic lower back pain "which increased in severity this AM when spouse threw hwe [sic] out of bed."  (Tr. 275).  Prior to discharge on July 19, 2008, plaintiff was observed to ambulate "without difficulty" and stated that "she was going to stay at her mother's home."  (Tr. 279).  No physical limitations were imposed on plaintiff at either of these hospital admissions.

> The undersigned finds it unclear how the ALJ found plaintiff could meet the threshold physical requirements of medium work, in absence of a physical capacities evaluation ("PCE") completed by a treating or examining physician, particularly in light of plaintiff's numerous severe impairments. This Court has held on a number of occasions that the Commissioner's fifth-step burden cannot be met by a lack of evidence, or by the residual functional capacity assessment of a non-examining, reviewing physician, but instead must be supported by the residual functional capacity assessment of a treating or examining physician. Because no such assessment exists in this case, . . . this case is due to be remanded for such assessment and any further proceedings not inconsistent with this decision.

264 F.Supp.2d at 1011-11.   This case is, however, distinguishable from Coleman.[6] Wiggins' alleged impairment is essentially only back pain[7] and there is nothing in her medical records that indicates in any fashion, let alone based upon objective clinical findings, that plaintiff cannot perform the light duty work assessed by the ALJ.

As the Commissioner correctly asserts, "it was the ALJ's responsibility to assess Plaintiff's residual functional capacity." (Doc. 18 at 7, *citing*, 20 C.F.R. § 404.1546; Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (1996).  As is appropriate, the ALJ in this case assessed Wiggins' residual functional capacity only after she carefully considered all of the relevant medical and other evidence. *See*, 20 C.F.R.§404.1545(a)(3); SSR 96-5p, 1996 WL 374183, \*5 (1996) ("a medical source statement must not be equated with the administrative finding known as the [residual functional capacity]

---

[6] This case is also distinguishable from Morgan v. Astrue, 2010 WL 5376336, \* 3 (S.D. Ala. Dec. 23, 2010), a case in which the ALJ relied upon a form completed by a non-medical agency employee despite the contrary medical evidence from a treating physician.  Wiggins has proffered no such contrary medical evidence.

[7] Plaintiff does not allege that her lower eyelid basal cell carcinoma interferes with her ability to work.

9

assessment"). It is the ALJ who "must determine if the claimant is limited to a particular work level" and such determination must only be based on "all relevant medical and other evidence in the case." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (quoting 20 C.F.R. § 404.1520(e)). . .[and] Oliver v. Astrue, 2010 WL 749890, * 6, n.6 (M.D. Ala. March 4, 2010)(residual functional capacity of a claimant is not a medical decision but is, instead, a determination to be made by the ALJ). This is not a case where the ALJ's RFC assessment conflicts with that of an examining or treating physician. At best it can be said that the ALJ's RFC conflicts with plaintiff's claims of physical limitations but her subjective claims are not supported by any objective medical evidence or opinion. However, even in the latter instance, it is "the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." Powers v. Heckler, 738 F.2d 1151, 1152 (11th Cir. 1984), *citing* Richardson v. Perales, 402 U.S. 389, 389-403 (1971).

Not all cases have required a treating or examining physician's assessment regarding functional capacity. In Griffin v. Astrue, 2008 WL 4417228, *10 (S.D. Ala. Sept. 23, 2008) this Court held that the ALJ's residual functional capacity was "supported by the claimant's treating physicians, as well as the absence of functional limitations placed on the claimant by any medical source." The Court also held that:

> The ALJ is bound to make every reasonable effort to obtain all the medical evidence necessary to make a determination, 20 C.F.R. § 416.912(d); however, he ***is not charged with making Plaintiff's case for her***. Plaintiff has the burden of proving that she is disabled. *See* 20 C.F.R. § 416.912(a) and (c). *See also* Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). In analyzing a plaintiff's claim, the ALJ must determine if the claimant is limited to a particular work level. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). Although a claimant may provide a statement

10

> containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented. The ultimate determination of disability is reserved for the ALJ. 20 C.F.R. §§ 404.1513, 404.1527, 404.1545.

2008 WL 4417228 at *9 (emphasis added). *See also*, Cooper v. Astrue, 2009 WL 537148, 7 (M.D. Ga. March 3, 2009)("The ALJ must order consultative exams and tests only when they are required in order to make an informed decision [and] an ALJ is not required to order additional consultative examinations if he does not find them necessary to make an informed decision."), *citing* Reeves v. Heckler, 734 F.2d 519, 522 (11th Cir. 1984). Wiggins' claim of error by the ALJ in this case is not predicated on conflicting medical evidence but, rather, is predicated essentially on the contention that, because there existed no contrary medical evidence, the ALJ should have sent Wiggins for "a consultative examination" in order to "determine the extent of [her] back impairment and functional limitations." (Doc. 15 at 8). Wiggins is charging the ALJ in this case with failing to make her case as opposed to failing to obtain sufficient evidence to resolve a conflict in the evidence. Consequently, there exist no legitimate grounds to reverse the ALJ's opinion in this case concerning Wiggins' RFC. *See also* Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997)("[T]here must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." ) No such prejudice has been alleged or shown in this case.

       B.  Medication Side-Effects.

Wiggins also contends that the ALJ erred in failing to "make a finding of fact with respect to the effects Ms. Wiggins' medications have on her ability to engage in work-

11

related tasks." (Doc. 15 at 9). Wiggins argues that "[f]ailure to articulate the reasons for discrediting subjective pain or other subjective symptom requires, as a matter of law, that the testimony be accepted as true as a matter of law." (*Id*., *quoting* Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988); and *citing* MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986)).

The ALJ expressly discredited Wiggins' testimony as "not credible" because it was "inconsistent with the record as a whole and the claimant's history of medical treatment." (Tr. 19). The ALJ specifically noted that:

> Medical records from treating orthopedist Dr. Dempsey document that from October 29, 2007, through June 17, 2008, the claimant saw him three times. During this period, Dr. Dempsey's treatment records document that his physical examinations revealed a well developed, well nourished female appearing her stated age with normal gait and *in no apparent distress*. She had *full range of motion of all extremities* and no neurological deficits were seen. She had normal reflexes and *no muscle atrophy or weakness of the lower extremities*. She walked without a limp and carried no external methods of support. She had a *normal straight leg raise*. Sensory and motor were intact. Strength was equal and symmetrical in all four extremities. X-rays showed the *hardware in good position without any loosening or breakage*. In June of 2008, the claimant *rated her pain as on a scale of ten as a four*. (Exhibits 7F, 8F and 9F).
>
> The [ALJ] further notes that the claimant's clinical examination findings have often been found to be *normal or minimally abnormal*. X-rays have persistently showed that the *hardware was intact with no evidence of loosening or breakage*. It is further significant that the claimant has *rated her pain as only three or four on a pain scale of zero to ten*.

(Tr. 19-20, emphasis added). The ALJ further found that "[n]othing in the record suggests that the claimant's physical impairments have been incapable of being alleviated or controlled with the proper and regular use of prescription medications [and] [t]he

12

record contains *no evidence of claimant's ongoing difficulties with side effects of medication*." (Tr. 20, emphasis added).

Wiggins points to no evidence in her medical records to substantiate her contention that she ever experienced any side effect of her medication that impaired her ability to perform the "light work" which the ALJ concluded she was capable of performing, other than the Clinical Assessment of Pain Form which she herself completed and was simply not refuted by her treating physician according to his endorsement.  Contrary to Wiggins' contention, the ALJ specifically found that the Clinical Assessment of Pain Form "contains insufficient rationale with no citation to medical evidence that would reasonably support the opinion in that document [which, in fact,] seems to be inconsistent with the record as a whole and the claimant's history of medical treatment." (Tr. 19).  Consequently, the ALJ appropriately discounted the Clinical Assessment of Pain Form signed by Dr. Dempsey after it was drafted by Wiggins as lacking any support in the record.

Wiggins gains no benefit from her reliance on  Winschel v. Commissioner of Social Security, 631 F.3d 1176, 1179 (11th Cir. 2011).  Unlike Winschel, the ALJ in this case clearly stated "with particularity the weight given to" Dr. Dempsey's opinion regarding Wiggins' pain assessment, namely that she found it "to be less than fully credible, assigns little weight and otherwise finds them not to be persuasive." (Tr. 19; Winschel, 631 F.3d at 1179).  Further unlike Winschel,  the ALJ in this case clearly stated her reasons for discounting Dr. Dempsey's opinion, which were based on the inconsistency of the opinion with the medical evidence, including Dr, Dempsey's own

treatment notes. (Tr. 19 and 20). *See* Hall v. Astrue, 2011 WL 4635028, *13 (N.D. Fla. Aug. 31, 2011)(This circuit finds good cause to afford less weight to the opinion of a treating physician "when the: (1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."), *quoting* Winschel, 631 F.3d at 1179; Phillips v. Barnhart, 357 F.3d 1232, 1240–1241 (11th Cir. 2004); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) ("The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory."). *See also*, Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004) (finding good reasons articulated by the ALJ to discount the treating physician's opinion).

     Finally, the evidence of record establishes that, after the alleged September 1, 2006 disability onset date, Wiggins worked four hours a day for two days a week, or eight (8) hour per week in 2007 (Tr. 32, 105, 121). Although the ALJ held (Tr. 14-15) that this part time work did not constitute "substantial gainful employment" ("SGA") within the meaning of the Social Security Act (20 CFR 404.1520(b) and 416.920(b)), the record establishes that Wiggins was taking pain medication throughout this part time employment (*see e.g.* Tr. 132-33). Wiggins, while admitting that the medication relieved her pain for "4 to 5 hours," did contend during the application process that the medicine made her "drowsy and dizzie [and] blurred vision." (Tr. 133). There is, however, no indication that she was unable to perform her part time work as Hostess at the Waffle House because of these side effects. The only reason given by Wiggins for not

continuing with this limited work schedule was that "[i]t was getting to where I couldn't stand." (Tr. 32). A review of Wiggins' medical treatment records also demonstrates that she never complained about any side effects of any medication and was often specifically noted by her physician as being generally "alert" and "[n]ot feeling tired or poorly." *See*, Tr. 194, 209, 213, 219, 266, 280, 300, 303, 304, 314, 317, 319, 321, and 322.

The ALJ did not err in the manner in which she addressed Wiggins' contention that the side effects of her medications were "present to such an extent as to be distracting to the adequate performance of work activities." (Tr. 19). The ALJ clearly stated her reasons for finding that this contention lacked credibility.

## V.   **CONCLUSION**

For the reasons stated above, it is recommended that the decision of the Commissioner of Social Security denying plaintiff's benefits be **AFFIRMED**.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this 14th day of February, 2012.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

Objection. Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within [fourteen] days [8] after being served with a copy of the recommendation, unless a different time is established by order." The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party=s arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

Transcript (applicable where proceedings tape recorded). Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this  14th day of February, 2012.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

---

[8] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).